Good morning, Your Honors. It is a pleasure to call you. My name is William Kiang, K-I-A-N-G, representing LONG. This is an immigration case involving asylum denial. And the basis of the asylum application was that the petitioner's wife suffered three coerced abortions in China for getting pregnant again after giving birth to one child, therefore in violation of China's one-child-only policy. And the issue before the Court today is credibility. The immigration judge found adverse credibility, and the Board of Immigration Appeals affirmed that finding. Now, I believe that the immigration judge in this particular case engaged in using her own speculation, conjecture, instead of the evidence in the record, to find adverse credibility. And, for example, I listed many points, but there are several more important points that I would like to bring to the attention of the Court. The judge said, if you have been sterilized, if you have been aborted three times, why would the hospital allow you to walk out of the hospital without forcibly sterilizing you? Now, the country condition report stated that, that is in the asylum profile and country condition report, it stated that the U.S. Embassy are unaware of any general requirements concerning forced sterilization dependent on the number of abortions a woman has had. And the second point, the judge said, if you were so unfavored by your work unit for your repeated offenses in getting pregnant out of plan, why did the Chinese government still allow you to travel out of the country? Now, the country condition report, again, which is also the asylum profile prepared by the State Department, says, regarding this issue, it says, multiple abortions would have no bearing on travel authorizations. At the time when the victim left China, she was already 42 years old and approaching the end of her fertile period. So there was no reason the Chinese government would still forbid her to travel. She came to the United States to join her husband, that Petitioner, in this particular case. Kennedy. Well, I suppose the Chinese government's population control is not concerned with people who were born in the United States, anyway. That's right. But in this case, there's no child born in the United States. The first child was born in China. Well, I understand that, but if that was the danger, I don't suppose it would concern the Chinese government. That's right, Your Honor. And third, the immigration judge wondered why — What is the effect of the divorce? All right, Your Honor. Should this Court deal with that? That's right. That's the issue. But that issue is not before this particular Court because the BIA has not made a ruling on this point yet. The divorce happened during the pendency of the appeal to the Board of Immigration Appeals. And in any event, I believe the Petitioner here is still eligible for asylum based on his own merits, because when they applied for asylum, he was a co-applicant on the asylum application. He is not seeking derivative beneficiary status based on asylum granted to his wife, but he is — Isn't it her fear of persecution, though, that's the basis for this case? That's correct, Your Honor.  All right, Your Honor. In two BIA precedent cases, one is the CYZ, matter of CYZ, saying that a man can — is entitled, is eligible for asylum based on his spouse's suffering, coerced abortion or sterilization. And then later on, there's — in the year 2003, May 23rd, the Board of Immigration Appeals issued another precedent case law called the YTL, matter of YTL, saying that abortion — forced abortion and sterilization is a continued, permanent persecution form because the couple are deprived or lost a child forever if the abortion was forced. Or if sterilized, the couple will be stripped of the ability to have more children forever. So based on this, the petitioner, a man, he has lost the chance to have three children by his wife's abortion. So he's a victim also in this case. How does that affect his situation now, whether he should be deported or not? All right, Your Honor. If the case is — Something that happened in the past. If the Board — if this Court finds the applicants of the asylum are credible, then this Court should remand the case to the Board of Immigration Appeals to determine whether or not the man is still eligible for asylum. If not, whether he should be granted another chance to apply for asylum, to submit an asylum application on his own. Would it be on the same ground that he would seek asylum? Yes, on the same ground, because he's also a victim. And to continue the points that I was making regarding the judge's speculative decision, the judge said, why didn't you quit your job instead of being persecuted by the work unit, which is a hospital, by the work unit birth control officials who forced us to do abortion? The judge missed the point, because one-child policy is nationwide in China. Whether you have a job, whether you don't have a job, the result is still the same. If you have a job, the work unit will be overseeing your — overseeing the policy. If you don't have a job, the neighborhood committee will be overseeing the implementation of birth control policy. And then the immigration judge said, why were you not punished? Normally, a person who violates the birth control policy will be punished by demotion, cut in salary, termination of jobs, et cetera. But the country condition report says that you are only punished when you actually violate the policy by having a second child born. Without a second child born, you undergo abortion or forced to be aborted. There's no punishment. The forced abortion itself is a punishment. And then the immigration judge draw on the point that why would this woman insist on having a second child when her first child apparently was normal? Well, this is a very emotional issue, because this respondent, this woman, her first child was born with an umbilical cord wrapped around his neck, and he was born a blue baby. And after a year, at one year old, he was still a little bit slow in development. Later on, he was — he became normal. But in a mother's mind, she was scared. She was worried. She still insisted on having a second one to be an insurance-healthy child. So what I'm pointing out to the Court is this. Throughout the whole testimony, throughout the immigration judge's decision, the judge did not find anything inconsistent, internally or externally. Did not find any omission. Did not find — did not find any negative demeanor. The whole issue of credibility, as the immigration judge saw it, was she cannot believe what the respondent — what the petitioner's wife testified. She cannot believe the Chinese government would do this to their people. But in the country condition report, it says the forced abortion and sterilization reached a height in the early 80s and mid-80s. And this is the period that the respondent — that the applicant in this particular case suffered three abortions. Well, the wife — she's not applying for — she's — I understand that she's — she's, what, withdrawn her application for political asylum? And she's relying on the fact that her father's a U.S. citizen, and she's seeking adjustment to lawful permanent residence. That's correct, Your Honor. This case — But she's not looking for political asylum. And so because of abortion, now, if she isn't — if she isn't looking for that relief as such, so how would he qualify as a — as a derivative claimant of asylum? All right, Your Honor. First of all, I will again clarify that the Petitioner in this case, Mr. Long, he is not seeking derivative beneficiary status. That status would be granted to spouses and family members if they were not listed in the asylum application in the beginning. And in this particular case, even the board, the BIA, stated that in their decision that regarding the Respondent's asylum applications, including the husband. So he's looking for — he's not looking for derivative asylum. He's not, Your Honor. All right. So what is the basis for his claim, then? He's not seeking it on account of his wife's fear? Oh, he is. The basis is exactly the same because he's also a victim of the Chinese coercive abortion because he, in this particular respect, he would — he could say he lost three chances to have another child. You agree with the government that if we agreed with your views of credibility, that then it would have to go back to the board for this issue to be explored? Exactly, Your Honor. All right. All right. Thank you. Thank you, Your Honor. May it please the Court. My name is Robin Bly. I represent the Attorney General in this matter. Just for a couple of points of clarification, on page 17 in Fong, the ex-wife's application, on the second page, there's a question, and this applies to Mr. Long. If in the U.S., is he or she included in this application for asylum? And they answered yes. The other options are no filing separately, no separate application, now pending, and no for other reasons. So he was seeking derivative status. In this case, the immigration judge found that Petitioner's ex-wife was not credible. She was the only one that testified at the hearing. Mr. Long was there, but he did not testify. Their claims are based on what happened to her while she was in, allegedly happened to her while she was in China. The immigration judge pointed out several different aspects of her testimony that she found to be contradictory or incredible. She noted that the Petitioner believed her child had developmental difficulties. And on page 17, she said in particular, they had a denial of trust. And let me ask. Refers make it clear that he is seeking derivative benefit here rather than having some direct right? Is that right? Yes, Your Honor. On page 17 on the, I think it was the file served on October, in October 2003, or it's the thinner file. I'm sorry, I don't have the exact date that that was served, but I know that there were two administrative rights. In other words, there's some box check there or something that says I'm seeking derivative benefit here. Well, it says, if in the U.S., is he or she included in this application for asylum? And the box yes is included. And as I indicated, the other responses were no filing separately, which is not checked, no separate application outpending, and no for other reasons. Explain why on the separate sheet of paper. Could he be included if he were asserting a direct claim? Could he be included in his wife's application? I believe he could. I've seen it where the aliens have had separate claims and then also been derivative of the others. Well, I guess this is all to be explored anyway, right? Ms. Song indicated that she was concerned about her son. She thought he was abnormal and had developmental difficulties. Despite the fact that she was told numerous times by medical friends that were professionals that her son was fine, she allegedly found herself pregnant three separate times after she had her first child and had gone every time to the birth control policy people asking that she be given some sort of exemption because her child was abnormal. Each time she was told that she needed a medical record. The judge found it a little bit incredible why she would have to the first time, without any medical evidence, go and tell them that she was looking for an exemption when she had already been told she needed medical documentation. There are certainly a lot of speculative things in that opinion. I mean, why did she admit to the committee there that she missed her period? Well, it's going to be obvious sooner or later. It's a strange opinion. Well, the way that Song testified about it was that basically, I mean, she made it seem like they could look at her and determine that she was not having a menstrual cycle. And she, you know, when asked about this, she was like, yeah, the director knew that I was pregnant, you know, before I told anybody. Coworkers knew that I was pregnant before I told anybody. But then she later admitted that she had told, she had self-reported or had been subject to a urine test. But there was a regular system reporting, wasn't there? Yes, it appears that there may have been. She also indicated that. Is it your position this court should remand in the event it overturns the immigration judge's determination of credibility? Yes, if the court finds that Song was credible, we would ask that the case be remanded so that the board can determine in the first instance whether Long can, whether there's any merit to Song's case and whether Long, as the ex-husband of Song, can receive derivative beneficiaries. So you agree with your opposing counsel that it ought to be remanded if the court overturns the credibility finding report, right? Yes, we put that in our brief as well, Your Honor. She also indicated that after her second abortion, she chose not to take the pills thinking she could not get pregnant, despite the fact that she's a nurse. I mean, these things just don't make any sense. The judge questioned why she wouldn't take the pills, knowing that she'd already gone through several abortions, how painful she indicated they were, and that it could have been just alleviated by taking these pills. You just posit, because she's a nurse, she would have that information. Do we know anything about her training and that sort of thing? Well, it was indicated that she was a pediatric nurse. But, Your Honor, I have to believe that she would have known that information. After her last abortion, the director was supposedly mad at Song in order for her to be sterilized because she had been pregnant several times. Song asked not to be sterilized and promised that she would not get pregnant again. She wrote a letter of guarantee, which is not of record, and the IJ rightly questioned why Song would be permitted to walk away, especially given the fact that she'd had three previous pregnancies, had not practiced birth control or anything else. I mean, she questioned why the work unit would have relied on her statement alone. I mean, by her own statements, she indicated that she was a problem employee, considered a problem employee by the work unit. And then in 1995, when there were work unit incentives for her to be sterilized, she again asked not to be sterilized and stated that her husband was in the United States and then said, you know, I'll go visit him. Well, it's really unclear why they would let her go. I mean, three previous times while her husband was in the country, she became pregnant. It was likely that she was going to become pregnant when she was visiting him. What about the country report statement that number of abortions would have no effect on travel? Excuse me? I thought your opponent quoted the country report saying that the fact that she'd had three abortions would have no effect on her ability to travel. No. And I'm not disputing that fact, Your Honor. But what I am disputing is the fact that she'd had three abortions before and had now said, I'll go to the U.S. to be with my husband. I mean, it was likely that she was going to become pregnant again. I'm not disputing that she could have traveled, but, I mean, they had proved to be fertile, you know, and it was likely that she would become pregnant again. So why would the Chinese government care about that? Well, because it was presumed that he was coming back, that they were coming back to the U.S. and that the risk of pregnancy would be there. Moreover, neither Song nor Long were ever fined or demoted or had any problems at their workplaces due to her pregnancies, despite her statement in her affidavit that's at page 23 that, before I was granted a birth permit by the birth control office of my work unit, I had to sign a one-child-only contract with them in which it was mandated that any out-of-plan pregnancies must be aborted and any deliberate violation of the law would bring on forced abortion and sterilization, followed by fines of two years, family gross income, loss of jobs and forfeiture of housing. None of this ever happened to them. She indicated that they, you know, had no problems or anything. And because of that, the immigration judge found that her testimony was incredible, and we would ask this Court to deny his petition for review. All right. Thank you. Thank you. I'll give you a minute for rebuttal. All right. Fine. Thank you. Matter of stand submitted.
judges: Pregerson, Canby, Reed